IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20385
_____

MICHAEL S. SLEEMAN,

Plaintiff-Appellant,

v.

BRAZORIA COUNTY, ET AL.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-95-CV-704)
_____

January 31, 1996

Before KING, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Michael S. Sleeman appeals the district court's dismissal of his 42 U.S.C. § 1983 claim against Brazoria County, Judge Ogden Bass, Judge James Blackstock, Cindy Hall, Sheriff Joe King, and Judge Samuel Kent, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the doctrines of absolute judicial immunity and qualified immunity. We affirm.

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

## I. BACKGROUND

On the morning of November 14, 1994, Sleeman went to the County Court at Law Number 3 of Brazoria County, with the intent of serving a federal complaint on Judge Blackstock. Sleeman's version of what happened that day is uncontested on appeal. According to Sleeman, he waited for a break in the proceedings and then asked Judge Blackstock's permission to approach the bench. Sleeman asked Judge Blackstock if the judge's clerk could accept service for him. When the judge answered "yes," Sleeman delivered the papers and left the courtroom. Several hours later, Sleeman returned to Judge Blackstock's courtroom as a subpoenaed witness in a case pending before the judge that afternoon. When Judge Blackstock noticed Sleeman sitting in the courtroom, the judge called him to the bench. Commenting that he disapproved of the way Sleeman had delivered his papers that morning, Judge Blackstock held him in contempt of court and imposed a sentence of ninety days incarceration and a $300 fine.

Sleeman petitioned for a writ of Habeas Corpus in both federal and state courts before Judge Kent and Judge Bass, respectively. On December 30, 1994, after Sleeman had served 38 days and a state appeals court had agreed to hear his habeas corpus petition, Judge Blackstock commuted Sleeman's sentence to time served.

On March 10, 1995, Sleeman, acting pro se, filed his original complaint for damages and alleged civil rights

violations pursuant to 42 U.S.C. § 1983,[2] in the United States District Court for the Southern District of Texas.  Sleeman asserted that Judge Blackstock had acted vindictively--wrongly finding Sleeman in contempt and sentencing him.  He alleged that Judge Bass and Judge Kent delayed in acting on his petition for the writ of habeas corpus.  In addition, Sleeman sued Brazoria County, and Cindy Hall, an assistant criminal district attorney of Brazoria County, and Joe King, Sheriff of Brazoria County, for assisting in his arrest.  Pursuant to Rule 12(b)(6), each defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

On May 2, 1995, the district court entered an order dismissing all defendants.  The district court found that, with respect to Sleeman's complaint:  Judges Blackstock, Bass, and Kent enjoyed absolute judicial immunity; Hall and King possessed qualified immunity; and Sleeman had "failed to provide any factual basis for his allegations that Brazoria County had an unconstitutional policy which led to his unlawful arrest."

---

[2]     Sleeman seeks damages under the Civil Rights Act of 1871, Rev. Stat. § 1979, presently 42 U.S.C. § 1983.  This section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thereafter, Sleeman timely filed a notice of appeal from the order and final judgment of dismissal.

## II. DISCUSSION

We review de novo a dismissal for failure to state a claim upon which relief can be granted. First Gibraltar Bank, FSB v. Smith, 62 F.3d 133, 135 (5th Cir. 1995). We accept the allegations of the complaint as true and we do not affirm the district court's dismissal unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. Lefall v. Dallas Indep. School Dist., 28 F.3d 521, 524 (5th Cir. 1994).

Sleeman challenges only the district court's dismissal of his § 1983 complaint against Judge Blackstock. The other defendants--Brazoria County, Judge Bass, Hall, King, and Judge Kent--are included in this appeal by virtue of Sleeman's notice of appeal, but Sleeman does not seek relief against them in his appeal brief. Although we construe the briefs of pro se litigants more permissively than those filed by counsel, Securities and Exch. Comm'n v. AMX, Int'l, Inc., 7 F.3d 71, 75 (5th Cir. 1993), issues not raised and argued in a litigant's initial appeal brief are considered waived. Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir.), cert denied, 115 S. Ct. 189 (1994). Therefore, consistent with an apparently deliberate choice on Sleeman's part, we find that he has abandoned his claims against all defendants other than Judge Blackstock.

4

The Rule 12(b)(6) dismissal of Sleeman's complaint against Judge Blackstock was based on the doctrine of absolute judicial immunity.  It is well-established "as a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."  Harper v. Merckle, 638 F.2d 848, 856 (5th Cir.) (quoting Bradley v. Fisher, 80 U.S. (13 Wall) 335, 347 (1871)), cert. denied, 454 U.S. 816 (1981).  For this reason, a judge acting within the ambit of his authority enjoys absolute judicial immunity.  McAfee v. 5th Circuit Judges, 884 F.2d 221, 222 (5th Cir. 1989), cert. denied, 493 U.S. 1083 (1990).  The Supreme Court has concluded that § 1983 did not abolish this settled principle of law.  Pierson v. Ray, 386 U.S. 547, 554-55 (1967)).  Therefore, a judge remains absolutely immune against actions for damages for all judicial acts that are not performed in the clear absence of all jurisdiction.  Malina v. Gonzales, 994 F.2d 1121, 1124 (5th Cir. 1993).

We must determine whether Judge Blackstock's actions were judicial acts and, if so, whether or not they fall clearly outside his jurisdiction as a state court judge.  Harper, 638 F.2d at 858.  The actions of Judge Blackstock that are at issue are those that took place on the afternoon of November 14, 1994-- when Judge Blackstock found Sleeman in contempt and sentenced

5

him.[3]  We consider four factors in determining whether Judge Blackstock's actions were judicial in nature:  (1) whether the precise acts complained of--use of the contempt and sentencing powers--are normal judicial functions; (2) whether the acts occurred in the courtroom or adjunct spaces; (3) whether the acts centered around a case pending before Judge Blackstock; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.  Malina, 994 F.2d at 1124 (citing McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir. 1972)).  These four factors are to be broadly construed in favor of immunity, and immunity is sometimes proper even though one or more of the factors is not met.  Id.  (citations omitted).

The first two factors weigh in favor of a finding that Judge Blackstock's actions toward Sleeman were judicial in nature.  The first factor--whether the precise acts complained of are normal judicial functions--favors Judge Blackstock because both the contempt citation and the sentencing are normal functions of a judge.  The second factor--whether the acts occurred in the courtroom or adjunct spaces--also favors Judge Blackstock.  Sleeman was found in contempt and sentenced in County Court at Law Number 3.

---

[3]  Sleeman and Judge Blackstock crossed paths twice on the day in question--in the morning, when Sleeman served the judge with process, and in the afternoon when Judge Blackstock found Sleeman in contempt and sentenced him.  Although the morning encounter precipitated the conduct taken by Judge Blackstock that afternoon, Sleeman does not seek damages for anything the judge did in the morning.  Because Judge Blackstock does not need to invoke the doctrine of absolute judicial immunity for his conduct in the morning, we need only focus on the afternoon encounter.

Judge Blackstock's position loses some ground, however, under the third factor. That factor--whether the acts centered around a case pending before the judge--clearly does not weigh in favor of a finding that Judge Blackstock's actions toward Sleeman were judicial in nature. The acts that led to Sleeman's incarceration did not center around any matter pending before Judge Blackstock. They were precipitated by Sleeman's service of process on Judge Blackstock in the morning, and they were subsequently triggered when Sleeman found himself back in the courtroom that afternoon within eyeshot of the judge.

Sleeman argues that the fourth factor--whether the acts arose directly out of a visit to the judge in his official capacity--weighs in favor of a finding that Judge Blackstock's actions were not judicial in nature. He contends that the confrontation arose out of nonjudicial business because he expected to be serving process on Blackstock, the private citizen, not Blackstock, the judge. Sleeman suggests that our holding in Harper supports his position. In Harper, we recalled the language of Stump v. Sparkman, 435 U.S. 349, 362 (1978), where Justice White concluded that "consideration must be given not only to the nature of the act itself but also to the expectations of the parties." Harper, 638 F.2d at 859 (quotation marks omitted).

Harper involved a § 1983 action brought against a county judge in Florida. The defendant in Harper, Judge Merckle, occupied an office in the courthouse where Jack Harper's former

7

wife worked as a secretary.  One day, while Harper was looking for his former wife, he happened into Judge Merckle's office. Judge Merckle was wearing street clothes and apparently did not identify himself.  Operating on the basis of courthouse gossip and mistakenly believing that there was an outstanding contempt violation against Harper, Judge Merckle began an impromptu interrogation session.  "[I]n what can be characterized fairly as a most unusual request, Judge Merckle, still seated behind his secretary's desk, told [Harper] to raise his right hand to be sworn in."  Harper, 638 F.2d at 851.  A befuddled Harper promptly left the building.  Court bailiffs caught Harper and escorted him back to the judge's chambers for a hastily convened contempt hearing at which Judge Merckle found him in contempt of court and sentenced him to three days incarceration.  In an "exceedingly narrow" ruling "tailored to this, the rarest of factual settings,"[4] we held:

> [W]hen it is beyond reasonable doubt that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to "judicial acts."

[4]    To exemplify the limited application of our holding in Harper, we noted that our research had revealed only one other case within the scope of our holding:  Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).  Harper, 638 F.2d at 859 n.17.  Zarcone involved a judge who ordered a coffee vendor handcuffed and brought before him after patronizing the vendor and adjudging his coffee "putrid."  Zarcone, 572 F.2d at 53.  In his chambers, the judge "started screaming at [the coffee vendor], threatening him and his 'livelihood' for about 20 minutes, and thoroughly scaring him."  Id.  Later that night, the vendor was again brought before the judge for a similar encounter.  Id. at 54.

8

<u>Harper</u>, 638 F.2d at 859.  Accordingly, we found that Judge
Merckle's actions could not be considered judicial acts and that
absolute judicial immunity was inappropriate.  <u>Id.</u>

The case at bar is distinguishable from <u>Harper</u>.  Whereas we
found it "clearly unreasonable to conclude that Harper
entertained the expectation that judicial matters were at hand
when he entered Judge Merckle's office on nonjudicial business,"
the same cannot be said of Sleeman in this case.  On the
afternoon of the day in question, Sleeman entered Judge
Blackstock's courtroom as a subpoenaed witness in a case pending
before the judge.  Sleeman was fully aware that "judicial matters
were at hand," even though he was not aware that one such
judicial matter would focus on him.  He did expect, however, to
encounter Judge Blackstock serving in his official capacity.  The
finding of contempt and the sentencing took place during this
afternoon visit.  Therefore, we find that the fourth factor
weighs in favor of Judge Blackstock, and, based on our analysis
of all four factors, we conclude that Judge Blackstock's actions
are properly characterized as judicial acts.

Notwithstanding that they are judicial in nature, to enjoy
absolute judicial immunity, Judge Blackstock's actions must not
fall outside his jurisdiction as a state court judge.  <u>Malina</u>,
994 F.2d at 1124.  We must determine whether Judge Blackstock had
subject-matter jurisdiction to issue the contempt citation and
sentence.  <u>Id.</u> at 1125 n.1 (pointing out that this approach is
consistent with the position taken by a majority of the Circuits

9

and the Supreme Court). By law, a judge in Texas may hold someone in his courtroom in contempt and sentence him to jail time, a fine, or both.[5] Thus, Judge Blackstock had subject-matter jurisdiction over Sleeman's conduct within the courtroom and therefore, Judge Blackstock's actions were not taken in the clear absence of all jurisdiction.

We conclude that Judge Blackstock is entitled to absolute judicial immunity for citing Sleeman with contempt and sentencing him to ninety days in jail and a $300 fine. We may disagree with the action taken by Judge Blackstock but that does not justify depriving the judge of immunity. Stump, 435 F.2d at 363. "This immunity applies even when the judge is accused of acting maliciously and corruptly." Pierson, 386 U.S. at 554. As long as the acts were performed in the exercise of his judicial

---

[5] Title 2, the portion of the Texas Government Code that deals with the judicial branch, provides in pertinent part:

§ 21.001. Inherent Power and Duty of Courts
(a) A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue writs and orders necessary or proper in aid of its jurisdiction.
(b) A court shall require that proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done.

§ 21.002. Contempt of Court
(a) A court may punish for contempt.
(b) The punishment for contempt of court other than a justice court or municipal court is a fine of not more than $500 or confinement in the county jail for not more than six months, or both such a fine and confinement in jail.
. . . .

Tex. Gov't Code Ann. §§ 21.001--21.002.

function, "the alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant." Boyd v. Biggers, 31 F.3d 279, 284 (5th Cir. 1994). Because Judge Blackstock is absolutely immune from suit for finding Sleeman in contempt and sentencing him, it follows that Sleeman failed to state a claim against Judge Blackstock upon which relief can be granted. The district court properly dismissed Sleeman's action pursuant to Rule 12(b)(6).

In addition to the doctrine of absolute judicial immunity, Judge Blackstock raises another argument in his defense. He contends that Sleeman's complaint is barred by the Supreme Court's holding in Heck v. Humphrey, 114 S. Ct. 2364, 2372 (1994).[6] As a result of our determination that Judge Blackstock enjoys absolute judicial immunity, we need not reach the question of whether the holding in Heck precludes recovery on a § 1983 suit brought under the peculiar facts of this case.

---

[6] In Heck, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."

Heck v. Humphrey, 114 S. Ct. 2364, 2372 (1994).

### III. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.